## Kelley, Maus & Co. v. The O'Brien Varnish Co.

1.   CORPORATIONS—*Acts Not Ultra Vires for Want of Power.*—Where an act is not *ultra vires* for want of power in a corporation, but is, for want of power in the agent or officer performing it, or because of the disregard of the formalities which the law requires to be observed, or is an improper use of one of its enumerated powers. it may nevertheless be valid as to third persons.   *Ultra vires*, in the legitimate use of the term, applies only to acts which are beyond the purpose of the corporation and which can not be sanctioned by the stockholders.

2.   SAME—*Contracts Ultra Vires for Want of Power—Ratification.*—Where a contract is *ultra vires* for an absolute want of power in the corporation to make it, there can be no power to render it valid by ratification.

3.   ESTOPPEL—*To Plead Ultra Vires.*—Where a contract of a corporation is void for an absolute want of power to make it, it can not become valid and legal as a contract by way of estoppel through some other act of the corporation.

4. APPEAL BONDS—*Execution of, by Corporations as Sureties.*—The execution of an appeal bond as surety by a corporation created for the purpose of dealing in merchandise is an act outside of the purpose for which it is created and consequently illegal.

5. ULTRA VIRES—*Corporations Delaying Creditors.*—The act of a corporation in delaying other creditors of its debtor by becoming surety for him on an appeal bond in order that it may collect its own claim can not be said to be a power necessarily implied from any of the powers conferred by a charter authorizing a general dealing in merchandise.

Debt, on an appeal bond. Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the March term, 1900. Reversed. Opinion filed July 23, 1900.

Statement.—This is an appeal from a judgment in debt on an appeal bond, in favor of appellee and against appellant and the Lindgren-Mahan Chemical Fire Engine Company. Appellee recovered judgment before a justice of the peace against the Lindgren-Mahan Company, and the latter company appealed. Kelley, Maus & Co., appellant, executed the appeal bond as surety. The declaration contains two counts. In the first count the execution of the bond is averred, and the bond, which is in the usual form, is set out *in haec verba,* and it is averred in substance that after the docketing of the appeal, and as soon as it could legally be done, the plaintiff obtained a rule on the defendants that the surety justify, or that a new bond be filed; that the rule not having been complied with within the time fixed by the court, the appeal was dismissed April 14, 1897, at the costs of the Lindgren-Mahan Company, and it was ordered that a writ of procedendo issue. The writ is then set out in the count, and it is averred that the justice of the peace thereafter issued an execution, which was delivered to a constable, and was by him returned no property found and no part satisfied, and that the Lindgren-Mahan Company has not paid the judgment, or any part thereof.

The second count contains substantially the same averments as the first, and also the following additional averments:

"That on the 12th day of April, 1897, and prior to the dismissal of the appeal by the Circuit Court as aforesaid, the defendant, Kelley, Maus & Co., obtained judgment by

Kelley, Maus & Co. v. O'Brien Varnish Co.

confession against the said Lindgren-Mahan Chemical Fire Engine Co. for $15,550 and costs of suit, and on the same day a writ of fieri facias was issued on said judgment against the lands, tenements, goods and chattels of said Lindgren-Mahan Chemical Fire Engine Co., and on the same day James Pease, sheriff of Cook county, levied said execution upon all property of every kind belonging to said Lindgren-Mahan Chemical Fire Engine Co., and all the right, title and interest which said company had in the following described property, to wit: Office fixtures, safe, pulleys, belting, shafting, chemical engines, hooks and ladders, iron and steel fittings, tanks, gas engines, valves, wagons, lumber and sundries; being all the personal property belonging to said defendant upon the premises occupied by it in Chicago, Illinois: that by virtue of said writ the sheriff, on April 23, 1897, sold all the aforesaid described property, except such as had been replevied from him, for the sum of $1,200; that on April 23, 1897, the sheriff paid to the attorneys of Kelley, Maus & Co. for it, the sum of $1,038.67, being the net proceeds of said sale; that on July 14, 1897, the sheriff returned said execution satisfied to the extent of $1,038.67, and unsatisfied as to the balance; that by reason of said judgment by confession, writ of execution and sale thereunder, Kelley, Maus & Co. obtained the benefits to be gained by making the aforesaid appeal bond, thereby staying all further proceedings under the judgment from which said appeal was prosecuted; by reason of such premises said Kelley, Maus & Co. prevented the plaintiff from obtaining satisfaction of its judgment entered by said Martin as aforesaid, and caused the plaintiff herein to be prevented from collecting its said judgment from the said Lindgren-Mahan Chemical Fire Engine Co., and that by said acts of said Kelley, Maus & Co., the said Lindgren-Mahan Chemical Fire Engine Co. was rendered wholly insolvent, and has not paid said judgment in favor of the plaintiff, whereby an action has accrued to the plaintiff to demand of the defendants said sum of $266 above mentioned."

The appellant, Kelley, Maus & Co., pleaded three pleas, substantially as follows:

1. That it is a corporation, organized and chartered under the general incorporation laws of the State of Illinois relating to the organization of corporations for pecuniary profit; that it was so chartered and organized on December 12, 1887; that the sole object and purpose for

which it was chartered and organized was to buy, sell and deal in iron, heavy hardware, shelf goods, wagon materials and carriage trimmings, and to carry on such business as usually appertains to a heavy hardware and iron store, and that it never was organized or chartered for any other purpose whatever, or authorized by its charter, or by the laws of said State, to transact any other business whatever, and that it has not, and never had, any power or legal authority to execute the instrument in the plaintiff's declaration mentioned, or to become surety upon any appeal bond of any person or corporation whatsoever.

2.   That it was at the time of executing the instrument sued on, and still is, a corporation organized and chartered under the laws of the State of Illinois, as shown and contained in an act entitled "An Act Concerning Corporations," approved April 18, 1872, in force July 1, 1872; that its capital stock is and always has been less than $250,000; that it is not, and never was incorporated or organized under the laws of the State of Illinois, or any other State, for the purpose of transacting business as surety on obligations of persons or corportions, and has not, and never did, comply with the requirements of the law relating to the admission of insurance companies to transact business in this State, and that it has not, and never had, any power or lawful authority to execute the instrument described in the plaintiff's declaration or to become surety on appeal bonds.

3.   That it is, and always since its creation has been, a corporation organized under the laws of the State of Illinois, and organized solely as a trading corporation for pecuniary profit, and is not, and never was, incorporated for the purpose of, or authorized to transact a surety business or to become surety on bonds required by law, and that it has not, and never had, any power or legal authority to execute the instrument in the plaintiff's declaration mentioned or to become surety on the bond sued on in this case.

Appellee demurred generally to each of the pleas, the court sustained the demurrers, and appellant electing to

stand by its pleas, the court rendered judgment against it for $266 debt and $156.37 damages.

DEFREES, BRACE & RITTER, attorneys for appellant.

Appellant's want of power to execute the bond was properly raised by special pleas and could not have been shown under the pleas of *non est factum.* City of Chicago v. English, 180 Ill. 476–9.

" The charter of a corporation, read in the light of any general laws which are applicable, is the measure of its powers, and the enumeration of those powers implies the exclusion of all others not fairly incidental. All contracts made by a corporation beyond the scope of those powers are unlawful and void, and no action can be maintained upon them in the courts, and this upon three distinct grounds: the obligation of every one contracting with a corporation, to take notice of the legal limits of its powers; the interest of the stockholders, not to be subjected to risks which they have undertaken; and, above all, the interest of the public, that the corporation shall not transcend the powers conferred upon it by law." Cent. Trans. Co. v. Pullman's Palace Car Co., 139 U. S. 24–48.

"A contract of a corporation, which is *ultra vires* in the proper sense—that is to say, outside the object of its creation, as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature —is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract can not be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it. When a corporation is acting within the general scope of the powers conferred upon it by the legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are prerequisites to its existence or to its action, because such prerequisites might in fact have been complied with. But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation, nor the other party to the contract, can be estopped, by assenting to it, or by acting upon it, to show that it was prohibited by those laws." 139 U. S. 59, 60;

181 Ill. 45; National Home Bldg. Association v. Home Savings Bank, 181 Ill. 35; Central Transportation Co. v. Pullman's Palace Car Co., 139 U. S. 24.

BASTRUP & O'NEILL, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellee, by demurring generally to appellant's pleas, admitted that it was not within the corporate powers with which appellant was vested by law to execute as surety the appeal bond in question. But appellee's counsel contend the appellant having, by the delay occasioned to appellee by the appeal, derived benefit from the appeal, as averred in the second count of the declaration, it is estopped to plead *ultra vires.* In view of recent decisions of the Supreme Court, we can not concur in this view. In National Home Bldg. Ass'n v. Bank, 181 Ill. 35, 43–4, the court say:

" It is also argued that the building and loan association is estopped to raise the question whether the contract was *ultra vires* because it has received the benefit of the contract by the conveyance of property to it. That depends, as we think, upon the sense in which the term *ultra vires* is used. It has been applied indiscriminately to different states of fact in such a way as to cause considerable confusion. When used as applicable to some conditions, it has been frequently said that a corporation is estopped to make such a defense where it has received the benefit of the contract. For example, the term has been applied to acts of directors or officers which are outside and beyond the scope of their authority, and therefore are invasions of the rights of stockholders, but which are within the powers of the corporation. In such a case the act may become binding by ratification, consent and acquiescence, or by the corporation receiving the benefit of the contract. Again, it has been applied to cases where an act was within the authority of the corporation for some purposes or under some circumstances, and where one dealing in good faith with the corporation had a right to assume the existence of the conditions which would authorize the act. Where an act is not *ultra vires* for want of power in the corporation, but for want of power in the agent or officer, or because of the disregard of formalities which the law requires to be

observed, or is an improper use of one of the enumerated powers, it may be valid as to third persons. In the more proper and legitimate use of the term it applies only to acts which are beyond the purpose of the corporation, which could not be sanctioned by the stockholders. There would of course, be no power to confirm or ratify a contract of that kind, because the power to enter into it is absolutely wanting. If there is no power to make the contract there can be no power to ratify it, and it would seem clear that the opposite party could not take away the incapacity and give the contract validity by doing something under it. It would be contradictory to say that a contract is void for an absolute want of power to make it and yet it may become legal and valid as a contract, by way of estoppel, through some other act of the party under such incapacity, or some act of the other party chargeable by law with notice of the want of power."

In Best Brewing Co. v. Klassen, 185 Ill. 37, which was a suit by Klassen against the Brewing Company on an appeal bond executed by it as surety for one Rounds, the court say:

"We think the primary question here is, not whether appellant has reaped a benefit from the act of becoming surety for Rounds upon the bond, but whether the act of signing it was within the scope of its corporate authority. The purpose of the corporation, as expressed in its charter, is to manufacture and sell ale, beer and porter and carry on a general brewing business. It would seem no acts could be more unlike than the doing of those authorized by the charter of the company and the signing of appeal bonds as surety. The instrument was executed in a suit, not by or against the corporation, but by a third person against another to recover possession of a house. *Prima facie*, the signing by the company of an appeal bond in such a suit was an act beyond the purpose for which it was organized, and consequently illegal. If it had been shown that it was executed clearly for the purpose of promoting or protecting its own business of brewing or selling beer, etc., that is to say, if the act had been reasonably necessary to accomplish the end for which the corporation was formed, it would have been within the scope of the corporate power. But it can not be held that every act in furtherance of the interests of a corporation is *inter vires*. Many acts can be suggested which, though beneficial to the business of a corporation, are too remote from its general purposes to be deemed reasonably within its implied powers. What is and what

is not too remote must be determined according to the facts of each case."

In the present case the sole object of the incorporation of appellant, as alleged in its first plea, was to buy, sell and deal in iron, heavy hardware, shelf goods, wagon materials and carriage trimmings, and to carry on such business as usually appertains to a heavy hardware and iron store. In Best Brewing Co. v. Klassen, *supra*, the court say:

"In exercising powers conferred by its charter, a corporation 'may adopt any proper and convenient means tending directly to their accomplishment, and not amounting to the transaction of a separate unauthorized business;'" citing Clark v. Farrington, 11 Wis. 340.

The signing the bond in question by appellant certainly did not tend directly to the accomplishment of any power conferred by its articles of incorporation. See also, Chicago Pneumatic Tool Co. v. H. W. Johns Mfg. Co., Ill. App. Ct., Gen. No. 8384, unreported.

To delay another creditor of appellant's debtor by becoming surety on an appeal bond, in order that it may collect its own claim against the debtor, can not be said to be a power necessarily implied from any power conferred on it by its charter, or a proper and legitimate means of the exercise of any such power. The judgment will be reversed.