James A. Pattison, Appellant, v. The Illinois Bankers
Life Association and Illinois Bankers Life Assur-
ance Company, Appellees.

Gen. No. 8,851.

Opinion filed January 10, 1935.

HANLEY & RYAN, of Monmouth, for appellant.

HUGH T. MARTIN and BARDENS & MELBURG, of Mon-
mouth, for appellees.

Mr. Presiding Justice Wolfe delivered the opinion of the court.

The appellant, plaintiff in the lower court, started suit against the appellees, defendants below, upon a policy of insurance issued by the defendant, the Illinois Bankers Life Association, to the plaintiff on the 8th day of August, 1913. The suit was brought to recover from the defendants the sum of $200 alleged to be due the plaintiff on a policy of insurance by virtue of a provision in the same which provided that when the assured became 70 years of age total disability was admitted to exist. No other provisions of the policy are sued upon and no other provisions in reference to the policy are at issue in this suit. To the plaintiff's declaration the defendant filed its answer and admits the issuance of the policy but denies liability on the same for the reason that the provision of the policy sued upon is ultra vires and void. The case was tried before the court without a jury upon an agreed stipulation of facts. The stipulation is as follows:

1. The Illinois Bankers Life Association is a corporation organized under the laws of Illinois under the Act entitled, "An Act to incorporate companies to do the business of life or accident insurance on the assessment plan," etc., approved June 22, 1893, and in force July 1, 1893, Cahill's St. ch. 73, ¶ 405 et seq., and certificate of incorporation was issued by the Secretary of the State of Illinois, November 3, 1897.

2. No provision of the by-laws of the Illinois Bankers Life Association are material to the issues in this case.

3. That August 8, 1913, plaintiff became a member of the Illinois Bankers Life Association and such association executed and delivered to him on that date certificate numbered 33,308.

4. Plaintiff has paid all assessments levied under said certificate as they became due, but no assessment or increase of rate of assessments has been levied on

account of, or collected for the payment of benefits under the provision of said policy providing, "Upon the assured attaining the age of seventy years total physical disability shall be deemed to exist and on such anniversary of the issuance of the policy thereafter 10 per cent of the face of this policy shall be paid to assured as such age total physical disability benefit until such policy shall be fully paid to said assured. The policy being reduced by each of said payments."

5. That plaintiff became 70 years of age January 25, 1932, and made written demand upon the Illinois Bankers Life Assurance Company for payment of 10 per cent of the face of said policy, under the above mentioned clause.

6. That plaintiff was not at the time of the filing of the complaint totally physically disabled and is not making any claim under the provision of the policy, which provides, "if the assured be permanently and totally disabled the result of accident or disease, one-half of this policy shall be paid on due proof thereof, and the remainder shall be paid at death." That plaintiff's sole claim at this time under said policy is made under the provision thereof as follows: "Upon the assured attaining the age of 70 years total physical disability shall be deemed to exist, and on each anniversary of the issuance of this policy thereafter 10 per cent of the face of the policy shall be paid to assured as such age total physical disability benefits until such policy shall be fully paid to said assured."

7. That the defendant, Illinois Bankers Life Assurance Company, is a corporation organized under the laws of Illinois, entitled: "An Act to organize and regulate the business of life insurance," approved March 26, 1869, in force July 1, 1869, Cahill's St. ch. 73, ¶ 315 et seq.

8. That by contract of reinsurance dated November 19, 1929, the Illinois Bankers Life Association

transferred to the Illinois Bankers Life Assurance Company its assets as trust funds for the benefit of the members of the Illinois Bankers Life Association, and the Illinois Bankers Life Assurance Company assumed the liabilities of the defendant, the Illinois Bankers Life Association, which liabilities are payable out of said trust fund held by it for the benefit of the members of the association.

9. That under the contract of the reinsurance each member of said association had the right to have his certificate or policy converted into any form of policy issued by the Illinois Bankers Life Assurance Company for that purpose upon proper adjustment of premiums and reserve, and that said policy or certificate was in no way altered or affected by said contract of reinsurance.

10. That the defendant, Illinois Bankers Life Assurance Company, reserved the right to any and all defenses to claims presented by members or by beneficiaries of members of the defendant, the Illinois Bankers Life Association, that said association would have been entitled to interpose except for such contract of reinsurance.

11. That said contract of reinsurance is now in full force and effect and was duly approved by the director of trade and commerce of Illinois.

12. That both defendants herein declined to make any payment under said policy to the plaintiff on his said claim and have advised the plaintiff that no payments are due thereunder. That such payment was declined by the Illinois Bankers Life Assurance Company, the company being advised by the director of insurance of the State of Illinois that in the opinion of the Attorney General of the State of Illinois, the Illinois Bankers Life Association had no legal power to insert a clause providing "disability deemed to exist at age seventy," and providing for payments under such a provision.

The court found the issues in favor of the defendant and that the clause in the policy providing "disability deemed to exist at the age of seventy" is ultra vires and void, and dismissed the suit at plaintiff's cost. The plaintiff brings the suit to this court for review.

The only point relied upon for reversal is: The court erred in holding the clause of the policy is ultra vires and contends even though considered ultra vires the defendant is estopped from pleading the same as a defense to the claim of the plaintiff.

The question to be decided is: "Did the defendant, the Illinois Bankers Life Association, have power to contract to pay a living member a fixed cash payment upon attaining the age of 70 years?"

The defendant association which issued the certificate involved in this suit was organized under the Assessment Act of 1893 and was so organized and existing at the time of issuing the certificate in question. Section 8 of said Act is as follows: "Every such life insurance corporation shall accumulate and maintain a reserve or emergency fund equal to such sum as might be realized from one assessment on, or periodical payment by policy or certificate holders thereof, and in no event less than the amount of its maximum policy or certificate. Such fund, if not already accumulated, shall be accumulated by every such existing corporation, within six months from the time this Act takes effect, and by every corporation hereafter formed under this Act, within six months from the date of its incorporation, and shall be held for the purposes for which said fund was created or accumulated. In case such fund or any portion thereof shall have been used by the corporation for the purpose or purposes for which the same was created or accumulated and the amount thereof thereby reduced to less than the amount of one death assessment or periodical payment, the amount of such reduction be-

low the amount of one death assessment or periodical payment shall be made up and restored to said fund within six months thereafter. Such fund may be held in cash or invested in the same class of securities required by law for the investment of funds by insurance corporations; and nothing herein contained shall prevent the creation and accumulation of other funds in excess of the amount herein required to provide for the purposes of such corporation. If such fund is in excess of the amount of one death assessment or periodical payment upon all certificates or policy holders and not less than the sum of one hundred thousand dollars, the excess or any portion thereof may be used in the reduction of assessment or periodical payments by policy or certificate holders by ratable cash dividends or credits, or in such other equitable division or apportionment thereof as its rules or contracts may provide, and such use shall not be deemed or construed to mean a profit received by members within the meaning of the statutes of this State, or the pro rata excess on any policy or certificate terminated by death or surrender may be refunded to the holder or beneficiary, as may be provided for in said policy or contract: *Provided,* that nothing contained in this Act shall be construed to permit any contract promising any fixed cash payment to any living certificate or policy holder, excepting in the contingency of total physical disability.'' Cahill's St. ch. 73, ¶ 412.

This insurance company was created by the statutes of Illinois and its powers were limited to those given it by the act under which it is organized. In the case of *Rockhold v. Canton Masonic Mut. Benevolent Society,* 129 Ill. 440, a very similar case, the same questions were involved as in this case. The Canton Masonic Mutual Benevolent Society was organized under the general laws of the State of Illinois for the purpose of giving financial aid and benefit to widows, orphans, heirs and devisees of the deceased members.

That association issued to Rockhold a certificate providing that on becoming 70 years of age, or after he had been a member in good standing for 25 consecutive years he would be paid a certain sum. Rockhold made all payments on this certificate as required and upon attaining the age of 70 years he served notice on the company demanding the amount alleged to be due him under the terms of the certificate. The defendant corporation had previously paid or given financial aid and benefits to the widows, orphans, heirs and devisees of deceased members. The court in the opinion states as follows: "The only difference between a corporation organized under the general law and one created by special statute is, that in the former we look to the certificate of the promoters, while in the latter to the special statute to ascertain the scope of the powers of the corporation. The rule for construing the instruments must necessarily be the same, namely, the powers specifically enumerated, and such others as are incidental or necessary to carry those powers into effect, but none others, may be exercised by the corporation." *Alexander v. Bankers Union of Chicago*, 187 Ill. App. 469; *Alton Mfg. Co. v. Garrett Biblical Institute*, 243 Ill. 298; *McCartney v. Supreme Tent Knights of Maccabees of the World*, 132 Ill. App. 15.

From an examination of the statute under which this company was organized we are of the opinion that they had no authority to issue the policy in question. The appellants insist, though the court hold the issuing of this policy is ultra vires, the defendant was estopped from raising that as a defense because they had accepted payments of the premiums from the plaintiff and he had relied upon the provisions of his policy as being valid. No doubt in many cases a corporation would be estopped from denying the ultra vires acts of their directors or agents. The Supreme Court in the case of *National Home Bldg.*

*& Loan Ass'n v. Home Sav. Bank,* reported in 181 Ill.
35, at page 43, gives an enlightening discussion of
what acts are ultra vires, and when a corporation is
estopped to deny such acts. In the opinion the court
says: "It is also argued that the building and loan
association is estopped to raise the question whether
the contract was ultra vires because it has received
the benefit of the contract by the conveyance of the
property to it. That depends, as we think, upon the
sense in which the term ultra vires is used. It has
been applied indiscriminately to different states of
fact in such a way as to cause considerable confusion.
When used as applicable to some conditions, it has
been frequently said that a corporation is estopped
to make such a defense where it has received the
benefit of the contract. For example, the term has
been applied to acts of directors or officers which are
outside and beyond the scope of their authority, and
therefore are invasions of the rights of stockholders,
but which are within the powers of the corporation.
In such a case the act may become binding by rati-
fication, consent and acquiescence, or by the corpora-
tion receiving the benefit of the contract. Again, it
has been applied to cases where an act was within
the authority of the corporation for some purposes or
under some circumstances, and where one dealing in
good faith with the corporation had a right to assume
the existence of the conditions which would authorize
the act. Where an act is not ultra vires for want of
power in the corporation but for want of power in
the agent or officer, or because of the disregard of
formalities which the law requires to be observed,
or is an improper use of one of the enumerated pow-
ers, it may be valid as to third persons. In the more
proper and legitimate use of the term it applies only
to acts which are beyond the purpose of the corpora-
tion, which could not be sanctioned by the stockhold-
ers. There would, of course, be no power to confirm

or ratify a contract of that kind, because the power to enter into it is absolutely wanting. If there is no power to make the contract there can be no power to ratify it, and it would seem clear that the opposite party could not take away the incapacity and give the contract vitality by doing something under it. It would be contradictory to say that a contract is void for an absolute want of power to make it and yet it may become legal and valid as a contract, by way of estoppel, through some other act of the party under such incapacity, or some act of the other party chargeable by law with notice of the want of power.''

The powers delegated by the State to the corporation are matters of public law, of which no one can plead ignorance. A party dealing with a corporation having limited and delegated powers conferred by law is chargeable with notice of them and their limitations, and cannot plead ignorance in avoidance of the defense of ultra vires. To the same effect is *Best Brewing Co. v. Klassen,* 185 Ill. 37; *Alton Mfg. Co. v. Garrett Biblical Institute,* 243 Ill. 298.

It is our opinion that the provision of the policy sued upon is one that the insurance company had no authority to make. The defendant should not be estopped from raising the defense of ultra vires.

The judgment of the circuit court of Warren county is hereby affirmed.

*Judgment affirmed.*